CHARLES P. NEWELL *vs.* ARTHUR R. BORDEN & others.

Bristol. Oct. 29. — Nov. 28, 1879. COLT & AMES, JJ., absent.

In an action against the members of an unincorporated association, for work and materials furnished in fitting up the room in which the association held its meetings, oral evidence that the defendants, at one of the meetings of the association, passed a vote authorizing the act of the defendant, who ordered the work and materials of the plaintiff, is competent to show that the other defendants were jointly liable with him; and the fact that one of the defendants, who acted as clerk of the meeting at which such vote was passed, has since destroyed the informal minutes which he had taken for the purpose of preparing a record, does not preclude the plaintiff from showing that such a vote was passed.

CONTRACT on an account annexed for work and materials, originally brought in the Second District Court of Bristol, against the first-named defendant alone. Judgment was entered for the plaintiff; and the defendant appealed to the Superior Court. In that court he filed an answer in abatement, alleging the nonjoinder of certain persons as defendants, and also an answer containing a general denial. Both issues were tried together, and a verdict was rendered for the defendant upon his answer in abatement. The plaintiff then amended his writ and pleadings, and summoned in those persons named in the answer in abatement, as co-defendants in this action. Some of these appeared and filed answers containing a general denial, and alleging that the goods and labor declared for were furnished to the defendant Borden individually. Borden also defended under his answer of a general denial. The other defendants, eight in number, were defaulted.

At the trial before *Rockwell*, J., it appeared in evidence that the defendants were members of the Quequechan Steam Fire-Engine Company in Fall River, an unincorporated association, but having regular officers including a clerk, who kept a record of all meetings; that the company met about once a month; that, on the last day of the year 1875, they moved from their old engine-house to a new one built and owned by the city of Fall River; that the plaintiff, who had already done some work in the way of fitting up the new house under orders from the city, was waited upon by the defendant Borden, then foreman of the company, and, acting under his direction, furnished

certain goods and labor for further fitting up the house; and that, soon afterwards, the city paid for a part of the goods and labor so furnished, leaving a balance of $282.69, for which this action is brought.

The plaintiff testified that, at the time of ordering the goods and labor, Borden said the city would probably pay for everything, and that he might open an account with it, but that Borden would be responsible and would see him paid; that the matter was entirely in his hands; and that the plaintiff gave credit to Borden. Borden testified that the goods and labor were procured on the credit of the Quequechan Engine Com pany; and that he gave the plaintiff so to understand.

The plaintiff sought to maintain his action, first, upon the ground that Borden was authorized to act with the plaintiff in the premises by a direct vote of these defendants, or otherwise by informal directions at a meeting of the company held just previous to their removal from the old to the new engine-house; secondly, upon the ground that these defendants, by their subsequent use and enjoyment of the property, and silence and acquiescence with a knowledge of the facts, had ratified the acts of Borden, and become liable to the plaintiff.

James R. Francis, one of the defendants who had been defaulted, testified for the plaintiff that he was clerk *pro tem.* of a meeting of the company just previous to their removal; that a vote was passed in respect to fitting up the new room; that the record of the meeting was kept on the back of an envelope in lead pencilling; that the pencil-marks became blurred, and that a few days after the meeting he tore the envelope up, subsequently giving to the regular clerk of the company the contents of the record as he remembered it. The witness was asked to state the substance of this vote as he remembered it. This question was objected to by the defendants, and excluded. The witness further testified that he personally had authorized and consented to Borden's acts; that he had seen the defendants Lottie, Winter, Burr and Wordell at the meetings of the company before and after the removal; and that he had " heard them talk both ways, that they were responsible and that they were not." The defendant objecting to the use of the word " them " as too general, the witness specified one instance of a

talk with Wordell in which the latter said, " I suppose we have got it to pay for."

The plaintiff called Borden and asked him whether either or any of these defendants had instructed him to act for them in procuring the goods and labor in question. The witness answered, " No." The plaintiff then asked the witness the following question: " At the meeting of the company held just previous to their removal, was anything said or done in respect to fitting up the new room? " The question was objected to by the defendants, on the ground that, the record of the meeting having been destroyed, oral evidence could not be introduced as to what took place there, and that evidence of what the company did was not admissible where the issue was that of the individual liability of these defendants. The question was excluded. The witness further testified that he had heard objections made by the members of the company to this bill; that these objections were to the effect that it was exorbitant; that no objection was made to what he had done until recently; that he did not remember any one saying anything to him privately about it; and that almost everything was said in company meeting.

It also appeared in evidence that the plaintiff had sent bills made out against the Quequechan Engine Company to the company, one through Borden, one by mail, and one through the foreman who succeeded Borden. A record of the company, dated in September 1876, was put in evidence, which read as follows: " The bill of Mr. Newell for fitting up the room was read to the company, and no action taken upon it." There was no evidence that the defendants used the room at the new engine-house at any other time than their regular monthly meetings; or that any notice was ever given to the plaintiff by any of the defendants that they repudiated the act of Borden, or that the plaintiff might take back the materials he had furnished.

The defendants Lottie, Wordell, Tower, Winter and Burr asked the judge to rule that there was no evidence to go to the jury of their liability. The judge so ruled, and directed a verdict for them.

The defendant Borden asked the judge to rule that there was no evidence to go to the jury of his joint liability; and that the verdict at the former trial was conclusive as to his sole liability.

The judge so ruled, and directed a verdict for him. The plaintiff alleged exceptions.

*J. F. Jackson*, for the plaintiff.

*H. K. Braley*, for Borden.

*A. J. Jennings*, for the other defendants.

GRAY, C. J. The defendants were not a corporation, and any record of their doings, if admissible in their favor, would not be the only evidence of facts stated therein. Oral testimony that they had passed a vote authorizing the acts of Borden was competent to show that the other defendants were jointly liable with him. The fact that one of them, who acted as clerk of the meeting, had since destroyed the informal minutes which he had taken for the purpose of preparing a record, afforded no reason for depriving the plaintiff of the benefit of his testimony. The exclusion of this evidence, and the ruling that there was no evidence of a joint liability to be submitted to the jury, were therefore erroneous; and the verdict must be set aside, both as to Borden and as to the other defendants; and it is unnecessary to consider what, if any, effect could legally be given to the answer in abatement first filed by Borden in the Superior Court after judgment against him on the merits in the District Court, or to the verdict rendered upon the answer in abatement so filed.                                *Exceptions sustained.*