EDMOND A. FORDYCE *vs.* WILLIAM E. L. DILLAWAY & another.

Suffolk.    March 26, 1912. — June 19, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DECOURCY, JJ.

*Equity Jurisdiction,* Specific performance of oral trust agreement, Laches, Accounting. *Fraud. Equity Pleading and Practice,* Supplemental bill.

In a suit in equity against an individual and a corporation the plaintiff alleged that he, the individual defendant and a third person formerly had been in control of the defendant corporation and that, having been ousted from such control, they formed a competing corporation; that, to induce them to make an agreement to cease competition, the defendant corporation conveyed to the individual defendant certain securities and agreed with him in writing to pay to him a certain sum yearly for a number of years as a salary; that the individual defendant orally agreed with the plaintiff and their associate to divide such securities and salary with them in the proportion of three fifths to himself and one fifth to each of them, and that he did not carry out his agreement as to the division of the salary. The suit was heard by a single justice and a decree was entered among other things adjudging that by virtue of the oral agreement between the individual defendant and the plaintiff and their associate the defendant received the salary from the corporation in trust for the plaintiff and the other associate. Upon an appeal by the individual defendant, all the evidence being reported, it was held that the findings were warranted by the evidence, and that the appeal should be dismissed.

In a suit in equity for an accounting, if it appears that during certain years the plaintiff received from the defendant payments in settlement of the account for those years and that the payments were smaller than they should have been, but that he was induced to accept such settlements through fraud of the defendant, the account ordinarily will be reopened and the plaintiff will be given relief; but, if it appears that in the last two of these years the plaintiff accepted the decreased sums without protest when he could have asserted his rights, and that he assented to such reduced payments, not because he was misled but for unrevealed reasons, such delay or forbearance on his part will prevent the reopening of the account.

Where in a suit in equity the plaintiff seeks to have the defendant compelled to make periodical payments to him under an oral agreement as to a trust and a decree is entered adjudging that such agreement be enforced, there cannot be included in a final decree an order that the defendant also pay sums which have. fallen due under the agreement during the pendency of the suit. To recover such sums the plaintiff must resort to a supplemental bill or to an amendment in the nature of a supplemental bill alleging that such additional sums have fallen due since the suit was begun.

BILL IN EQUITY, filed in the Superior Court on August 22, 1911, and on motion of the defendant Dillaway removed to the Supreme

Judicial Court on October 23, 1911, against William E. L. Dillaway and the American Pneumatic Service Company (hereinafter called the American Company), alleging in substance that the plaintiff, the defendant Dillaway and one Arthur S. Temple, deceased, who previous to June, 1907, were in the control of the defendant corporation, were ousted from control in June, 1907, and that thereafter they, as associates, organized a competing company called the United Store Service and Tube Company (hereinafter called the United Company), and carried on business until the winter of 1909 in competition with the defendant corporation; that in the winter of 1909 the defendant corporation entered into negotiations which finally resulted in the purchase of all the property and rights of the United Company, and in an agreement between the defendant corporation and Dillaway, Fordyce and Temple that they should cease competing with it; that these negotiations were carried on for the three associates by Dillaway as agent and trustee for himself and them; that at the time of such adjustment it was understood and agreed that all the consideration paid and to be paid by the defendant corporation should be delivered and paid to the defendant Dillaway as agent and trustee for himself and associates, including the plaintiff; that "after the delivery of certain property and payment of certain sums of money to employees and certain persons who had rendered services for the United Company enterprise, it was the agreement and understanding" that the defendant Dillaway should divide the stocks, bonds, and cash received and to be received as a result of settlement between himself and the plaintiff and Temple in certain agreed proportions, different as to the stocks and bonds, but as to the cash three fifths to Dillaway, one fifth to Temple, and one fifth to the plaintiff, that the defendant Dillaway properly accounted for the bonds, but not for the stock; that about the close of the negotiations with the defendant corporation Dillaway informed the plaintiff and Temple, that because of certain legal reasons, in no way affecting their rights, the cash payment of $110,000 would come in instalments and would take the form of payment for personal or professional services to be rendered by him to the defendant corporation, but that he would receive it as trustee and pay over to each of them one fifth as he should receive it, $25,000 a year for the first two years and $20,000 for the

next three years; that from time to time as partial distributions were made, the defendant Dillaway falsely represented that he had made payments to other persons of sums alleged to be due them, but not in fact due or paid to such persons, making said alleged payments an excuse for the retention by Dillaway of sums distributable one fifth to the plaintiff; that partial payments were received by the plaintiff during the first two years, and that on June 1, 1911, Dillaway refused to make any payment to the plaintiff out of the sum of $5,000 then received by him from the defendant corporation; that the plaintiff frequently had requested of the defendant Dillaway a full and complete accounting of the stock received by him and of all the money received by him from time to time, but that that defendant had neglected and refused to make such an accounting. The prayers of the bill were " (1) that the defendant Dillaway, as trustee for himself and associates, may be ordered to account for all stock received from the defendant corporation and all cash paid to him since February 1, 1909, whatever the nominal consideration for which such transfer and payment, or either of them may have been made by the defendant corporation to the defendant Dillaway;" (2) that the defendant corporation be enjoined from making further payments to Dillaway on account of the settlement, and (3) for general relief.

The case was heard by *DeCourcy,* J., a commissioner having been appointed to take the evidence. The single justice filed the following memorandum of his decision:

"The main issue of fact in this case is whether the quarterly payments of $1,125 from the defendant to the plaintiff were merely gifts, as claimed by the defendant, or were moneys due to the plaintiff in connection with the sale of the United Store Service and Tube Company to the American Pneumatic Service Company. On all the evidence I am satisfied that the latter is the fact. The consideration of the sale included cash, in which the plaintiff and Mr. Temple (since deceased) were to share. The defendant, who carried on the negotiations for the United Company, embodied the money consideration in the form of, or at least in connection with, a contract for his personal services, which secured the American Company from the competition of the defendant, the plaintiff, and Temple. His financial interest, experience, and relations with the plaintiff enabled him to dictate the form of the written agree-

ments. Four thousand dollars of the annual $25,000 was to go to the plaintiff; and on Temple's death $500 was added from Temple's share.

"I am satisfied that the plaintiff asked for and expected a written agreement from the defendant, and that he would have secured it if he were in a more independent position or of more aggressive disposition.

"It is true that many of the exhibits seem inconsistent with this conclusion. But one was prepared to protect the plaintiff's share from attaching creditors; and many of them were not known to the plaintiff or were prepared at the defendant's dictation.

"I am satisfied that the plaintiff has received all that was due to him before June 1, 1911. The defendant has paid to the plaintiff the stock and bonds to which he was entitled, and the plaintiff has not shown that he is entitled to an accounting.

"Decree ordering the defendant Dillaway to pay to the plaintiff his quarterly share. As to the American Pneumatic Service Company, bill dismissed."

Later the single justice filed the following memorandum:

"Since filing the memorandum of decision in which is stated my finding that the $4,500 a year paid by the defendant Dillaway to the plaintiff for the two years beginning March 1, 1909, was a payment of money due and not merely a series of gifts, counsel have submitted a stenographic report of the testimony and argued at length as to the amount of the share payable to the plaintiff.

"I am satisfied that originally the plaintiff was to receive one fifth of the so-called 'salary,' viz., $5,000 a year for the first two years and $4,000 a year for the last three years. The $5,000 sum was later changed to $4,000, and upon the death of Mr. Temple (but relating back to March 1, 1909) to $4,500; and this last amount was paid or credited to the plaintiff and accepted by him without objection, in quarterly payments, during the two years.

"The evidence, unaided by conjecture, does not make clear the reason which induced the plaintiff to assent to this reduction from the $5,000 originally agreed upon. It may have been due, as contended by his counsel, to a statement made by the defendant that $3,000 a year was to go to one Maston, and that the plaintiff must contribute a portion of his share for that purpose.

"The influence of the plaintiff's testimony supporting this con-

tention is weakened by his subsequent conduct, such as his failure to mention the Maston claim to Mrs. Temple. But, assuming that his testimony as to the Maston claim is true, in view of his failure to investigate this alleged claim for two years while his friendly relations to the defendant afforded ample opportunity, I am not satisfied that this was the inducing cause of his accepting the lesser amount. Under the circumstances disclosed his agreement to accept $4,500 a year for the first two years should not be set aside at this late day.

· "For the last three years the plaintiff is to receive $4,000 a year out of the defendant's salary from the American Pneumatic Service Company, unless he has assented to a modification of the original agreement. I do not find that he ever agreed to any reduction from that amount. There is evidence which indicates that the defendant intended to pay the plaintiff only $3,000 a year during the last three years, and that the plaintiff had notice of such intention, yet took no action thereon. But this conduct of the plaintiff may be accounted for, in my opinion, by the facts that he had no· written evidence of his claim; that his only corroborating witness, Temple, was dead; that in order to shield himself from creditors he had signed papers that left him apparently in the hands of the defendant, and that throughout he had expected the defendant to pay him the amount agreed."

A final decree was entered in substance as follows:

"(1)  That the contract between the defendant Dillaway and the American Pneumatic Service Company . . . was duly executed by the parties thereto and is now outstanding and in force. . . .

"(2)  That by virtue of an oral agreement and understanding entered into between the plaintiff and the defendant Dillaway at or shortly after the execution of said contract . . . the defendant Dillaway agreed that out of the sums payable to him from the defendant American Pneumatic Service Company under said contract the sum of $4,500 a year for two years and $4,000 a year for the next three years, should be received by him in trust and forthwith paid over in equal quarterly instalments to the plaintiff.

"(3)  That the defendant Dillaway has neglected and refused to pay from the sums received by him from the ·said American Pneumatic Service Company" sums amounting to $3,000, for which and for interest and costs an execution against Dillaway

was ordered; that the defendant Dillaway, so long as there is no breach by said Fordyce of the agreement between the plaintiff, the defendant Dillaway and Temple, previously described, "shall forthwith pay over to the plaintiff Fordyce, quarterly, said sums of $1,000 as and when payments accruing to the defendant Dillaway under said contract with the defendant American Pneumatic Service Company shall hereafter be made by said American Pneumatic Service Company to the said Dillaway."

As to the defendant corporation the bill was dismissed.

Both the plaintiff and the defendant Dillaway appealed.

*G. W. Anderson,* for the plaintiff.

*F. Paul,* for the defendant Dillaway.

BRALEY, J. The questions presented by the cross appeals are, what amount, if any, is the plaintiff entitled to recover from the defendant' Dillaway, and if relief should be given, whether the final decree is supported by the averments of the bill.

The plaintiff, the defendant and one Temple, who died before suit was commenced, organized a corporation to enter into competition with the defendant, the American Pneumatic Service Company, formerly in their control, but from which they had been displaced by changes in the corporate management. After nearly two years of competition with extensive litigation between the companies concerning alleged infringment of patents either owned or controlled by the defendant corporation, the new company ceased to do business under the agreements in writing appearing in the record. It is fairly to be inferred from the oral testimony of the defence, that by reason of the business ability and large experience of the personal defendant the procurement of his services or co-operation in the future, operated as an inducement for the contracts. But irrespective of the controlling purpose whatever it may have been, this defendant received the stock and bonds which formed the consideration under the second agreement, and by an oral arrangement among themselves the stock and bonds were divided in the proportion of three fifths to himself, and one fifth each to the plaintiff and Temple. By the terms of the first agreement executed on February 23, 1909, to which neither the plaintiff nor Temple were parties, the defendant was to receive as advisory counsel in various capacities a yearly salary from the purchasing company payable quarterly during the ensuing five

years at the rate of $25,000 a year for the first two years, and $20,000 a year for the remainder of the period. It is contended by the plaintiff, whose testimony sustains his position, that the defendant agreed to make a similar division of the salary as the instalments were received. The first agreement contained a clause, that if the second agreement should be broken by either the plaintiff or Temple the salary should be reduced very appreciably, but upon a breach by both, the reduction should be doubled. It was greatly for the defendant's pecuniary advantage, that the second agreement should not be violated. The defendant's checks show that for the first two quarters he made payments to the plaintiff at a less rate, but in explanation of this difference the plaintiff testified, that deductions were made in payment of his promissory note which the defendant held, and if this indebtedness were included these payments corresponded in amount with the agreement for division. During the succeeding six quarters the payments were reduced, and the plaintiff asks that the defendant be ordered to pay the arrearage.

The dealings between the parties do not seem to have been inconsistent with the plaintiff's claim, that his right to share in the money received as salary as well as in the stock and bonds had been recognized and conceded. Despite the defendant's positive denial of the plaintiff's statements, and his explanation of the checks as being merely gratuities, the finding of the single justice shown by his memorandum of decision, that the oral agreement relied on by the plaintiff had been proved, should not be set aside. *Revere Water Co.* v. *Winthrop*, 192 Mass. 455, 459.

Ordinarily it would have followed, that the defendant should account for the amount withheld. If the quarterly share had been computed on the amount actually received by the defendant the payments to the plaintiff for the six succeeding quarters should have been $1,250 for each quarter instead of $1,215, and the plaintiff's appeal is grounded on the refusal of the justice to order the defendant to pay the arrearage. The explanation of the defendant proffered to the plaintiff, that he had paid the difference to one Maston to whom he was under obligations for assistance in the accomplishment of some of his commercial projects, is unsatisfactory when viewed with his admission at the trial, that the money withheld had not been paid to any one, and there is much force in

the plaintiff's argument, that he had been deliberately misled when consenting to the reduction. It has been often decided, that where fraud appears even although not directly averred in the bill, a settled account will be reopened, and the plaintiff given relief. *Farnam* v. *Brooks,* 9 Pick. 212. *Barrow* v. *Rhinelander,* 1 Johns. Ch. 550. *Rehill* v. *McTague,* 114 Penn. St. 82. *Branger* v. *Chevalier,* 9 Cal. 353. *Perkins* v. *Hart,* 11 Wheat. 237. *Williamson* v. *Barbour,* 9 Ch. D. 529. But the plaintiff accepted the decreased sum for two years without protest when he could have asserted his rights, and upon a review of his general conduct and subsequent course of dealing with the defendant the impression is not removed, that for some undisclosed purpose he preferred to make no further inquiry, and did not care to insist on a strict performance. The further finding of the single justice, that the plaintiff assented to the reduced payments not because he had been misled, but for unrevealed reasons, not having been unwarranted, he properly held, that owing to the plaintiff's delay or forbearance to press the claim it would be inequitable to reopen the account. *Foster* v. *Hodgson,* 19 Ves. 180, 185.

It is elementary as the defendant contends, that the decree should follow the pleadings, and the stating part of the bill cannot be enlarged under a prayer for general relief. *Bushnell* v. *Avery,* 121 Mass. 148. The plaintiff, however, asked for an accounting not only of the whole consideration whenever it accrued and became payable, but of the instalments the defendant had received. And although upon the evidence the relief specifically sought was too broad, yet the relief granted having been coextensive with the allegations of the bill the decree should be affirmed. *Franklin* v. *Greene,* 2 Allen, 519.

If as the plaintiff suggests further instalments have accrued since filing the bill, he must resort to a supplemental bill, or to an amendment in the nature of a supplemental bill to recover the arrears. *McMurtrie* v. *Guiler,* 183 Mass. 451, 454, 455.

*Decree affirmed with costs.*