Lauriat, Peter M., J.
In this action, Lenders Title Services, Inc. (“LTS”) and Suzanne Accardo (“Accardo”) brought a third-parly claim against Bank of America, N.A. (“BOA”), seeking contribution pursuant to G.L.c. 23 IB, and for breach of an implied contract. Both claims arise from an alleged failure to discharge an open-ended home-equity line of credit mortgage given to BOA’s predecessor in interest.
BOA has now moved for summary judgment on LTS’s claims against it. For the following reasons, BOA’s motion for summary judgment is allowed.
BACKGROUND
The pleadings, affidavits, and memoranda set forth the following facts. Old Republic National Title Insurance Company (“Old Republic”) is a Minnesota corporation with its usual place of business in Andover, Massachusetts. SAA Group, LLC (“SAA”) is a Delaware limited liability company with its usual place of business in Woburn, Massachusetts. SAA is affiliated with the Ablitt Law Offices, P.C. (“Ablitt”) of Woburn, Massachusetts.
On or about June 27, 2002, Fleet National Bank (“Fleet”) filed an Open End Mortgage in the Bristol County Registry of Deeds on property at 415 Lindsey Street in Attleboro, Massachusetts (“the Property”), that was intended to secure a $120,000 home equity line-of-credit loan it had made to Ricky and Linda Greigre. In 2003, the Greigres decided to refinance that debt with a loan from the Washington Mutual Bank (“WAMU”), to be secured by a mortgage on the Property, in an amount greater than the Fleet loan. To protect its interest, WAMU purchased a title insurance policy from Old Republic, through its agent, Lenders *309 Title Services, Inc. (“LTS”), whose presidentis Suzanne Accardo (“Accardo”).
In advance of the closing, LTS obtained from Fleet the pay-off amount of $ 120,899, for the Greigres’ then existing home equity loan. LTS conducted the closing of the refinancing on or about January 28, 2003, and in connection therewith, recorded WAMU’s mortgage in the Bristol County Registry of Deeds. On February 4, 2003, LTS delivered a check to Fleet in the amount of $120,899, in full payment of the Greigres’ home equity loan. Fleet, however, did not freeze or close the Greigres’ home equity loan account, and did not send LTS a discharge of its mortgage. Fleet’s failures apparently allowed the Greigres to re-borrow $120,000 against their home equity line-of-credit within days of the closing. At some point after February of2003, BOA acquired Fleet.
Late in 2005, the Greigres defaulted on their WAMU loan. WAMU engaged the Harmon Law Offices (“Harmon”) to foreclose on its mortgage. In conducting a title examination on the Property, Harmon noted that Fleet’s prior mortgage had not been discharged. On November 22, 2005, Harmon advised LTS of this encumbrance on the Property, and LTS in, turn, contacted BOA. On December 12, 2005, WAMU assigned the Greigres’ Note and mortgage to DLJ Mortgage Capital, Inc. (“DLJ”). In turn, DLJ engaged Select Portfolio Services, Inc. (“SPS”) to act as its attorney-in-fact and loan servicer in connection with the foreclosure of the WAMU/DLJ mortgage on the Property. SPS engaged the law firm of Ablitt & Charlton (“Ablitt”) to conduct the foreclosure proceedings on behalf of DLJ.
On January 31, 2006, in an apparent response to LTS’s inquiry, BOA executed a Discharge of Mortgage with respect to the Greigres’ 2002 Fleet home equity line-of-credit loan, and on February 14, 2006, that discharge was recorded in the Bristol County Registry of Deeds. On February 21, 2006, BOA executed a second Discharge of Mortgage with respect to the Greigres’ 2002 Fleet home equity line-of-credit loan, and on March 6, 2006, that discharge was recorded in the Bristol County Registry of Deeds. However, at the times that these mortgage discharge notices were filed, the Greigres still owed Fleet n/k/a BOA at least $120,000 on their home equity line-of-credit loan.
On March 29, 2006, BOA—asserting “clerical error and mistake”—executed a Revocation of Discharge of Mortgage, which was recorded in the Bristol County Registry of Deeds on June 30, 2006.
On November 15, 2006, BOA commenced a declaratory judgment action against the Greigres, DLJ, and another in the Bristol County Superior Court (“the Bristol Action”) seeking to void and revoke its discharge of the Fleet mortgage. On December 7, 2006, BOA recorded a Memorandum of Lis Pendens against the Property with the Bristol County Registry of Deeds. Although Ablitt and DLJ had become aware of the Bristol Action by not later than November 20, 2006, DLJ did not take any steps to defend itself in that case.
On January 4, 2007, Ablitt, representing DLJ, sent a claim letter to Old Republic informing Old Republic that “a recent title examination for the purpose of foreclosing on the said mortgage indicates that a senior mortgage exists in favor of Fleet National Bank in the principal amount of $120,000.” The letter did not disclose, mention or reference the Bristol Action. Old Republic acknowledged receipt of the claim letter the same day, and, as a matter of course, issued a Future Policy Indemnity Letter in which it agreed to “issue a new policy to the successful bidder at the foreclosure sale . . . without exception for this problem.”
On February 8, 2007, BOA secured a default judgment in the Bristol Action, thereby restoring its mortgage to first position, ahead of DLJ’s. Old Republic was not expressly informed of the Bristol Action by DLJ, SPS, Ablitt, or SAA until October 30, 2007. Moreover, Old Republic was not informed of BOA’s default judgment until December 12, 2007. Consequently, Old Republic was prevented from intervening in the Bristol Action and asserting a variety of viable defenses. Nonetheless, Old Republic informed DLJ that, should DLJ be successful in having the default judgment vacated, Old Republic would defend DLJ in the Bristol Action. DLJ, SPS, Ablitt, and SAA took no steps to remove the default judgment.
On or about April 15, 2008, BOA conducted a foreclosure of the Fleet Mortgage, thereby extinguishing the WAMU Mortgage. DLJ/SPS was the high bidder at the foreclosure sale and agreed to buy the property for $150,000. Ablitt paid both the bid deposit of $5,000, and the purchase price of $150,000 on behalf of DLJ in connection with the foreclosure sale.
On January 8, 2009, DLJ executed an Assignment of Claim in favor of SAA. SAA then sought indemnification under the Old Republic policy by virtue of this assignment. Old Republic refused, and the present action followed.
DISCUSSION
A motion for summary judgment shall be granted if admissible evidence “show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c). The moving party must affirmatively demonstrate that there are no genuine issues of material fact in dispute. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “This burden... maybe satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Comm. Corp., 410 Mass. 805, 809 (1991). In response, the nonmoving party “must set forth sufficient facts showing that there is a genuine issue for trial.” Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989), quoting Mass.R.Civ.P. 56(e). A party may *310 not rest on “conclusoxy statements, general denials, and factual allegations not based on personal knowledge” in opposing amotion for summary judgment. LaBrecque v. Parsons, 74 Mass.App.Ct. 766, 768 (2009).
I.Contribution
In its third-party complaint, LTS argues that if it is found to be liable to SAA, then BOA should be forced to contribute to any monetary judgment as a joint tortfeasor. General Laws c. 23IB, §1 states that:
Except as otherwise provided ... where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them ... The right of contribution shall exist only in favor of a joint tortfeasor . . ,[1]
In Hayon v. Coca Cola Bottling Co., 375 Mass. 644, 648-49 (1978), the Supreme Judicial Court held that the equitable basis for permitting claims for contribution is to “remedly] . . . the unfairness of allowing a disproportionate share of the plaintiffs recovery to be borne by one of several joint tortfeasors.” The meaning of the phrase “liable in tort” should be accorded a broad interpretation and persons who qualify as tort-feasors should not be limited in scope. Id. at 649; McGrath v. Stanley, 397 Mass. 775, 781 (1986). In order for a defendant to assert a claim for contribution under G.L.c. 23IB, §1, the primary plaintiff need not have named the third-party defendant as a party in the original action. See McGrath, 397 Mass. at 781. Rather, all that is required is that “the party from whom contribution is sought could have been liable in tort.” Id.
BOA reasons that because G.L.c. 23IB, §1 applies only to claims involving “liability in tort,” then LTS’s third-party claim must fail because SAA does not assert a “tort-type” claim against LTS. Rather, SAA’s claim against LTS sounds only in contract. LTS disputes BOA’s characterization and points to SAA’s use of the language “breach of duty” in its complaint as evidence of a tort-based claim.
This court has already examined the issue of whether LTS’s negligent performance of its contractual duties provided a simultaneous and independent basis for relief in tort. In its Memorandum of Decision and Order granting SAA’s summary judgment motion against LTS, the court concluded that SAA did not assert a tort-type claim against LTS. Rather, SAA’s claim against LTS sounded only in contract. Thus, on the issue of contribution, BOA must prevail as a matter of law given that G.L.c. 23 IB, §1 applies exclusively to tort claims.[2]
II.Breach of Implied Contract
LTS next argues that BOA can be held liable for breaching an implied contract between the parties. “In the absence of an express agreement, an implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties.” T.F. v. B.L., 442 Mass. 522, 526-27 (2004) (citing W.A. Snow Iron Works v. Chadwick, 227 Mass. 382 (1917)). “An implied contract requires proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have expected, that he or she would have to pay for that benefit.” Id. “When the defendant was, or should have been, aware of the plaintiffs expectations in this regard, the defendant’s failure to object can create a contract." Id.
Here, no implied contract existed between BOA and LTS. Rather, the only contractual relationships that existed were between (1) LTS and SAA and (2) BOA and the Greigres. Thus, while LTS and BOA may have had business interaction with one another in light of their other contractual relationships, such behavior did not amount to an implied contract. Neither parly had a reasonable expectation that the benefit provided by their relationship would require return payment. To the contrary, BOA’s role in the transaction resulted from its contractual relationship with the Greigres, while LTS’s role in the transaction was the product of its contractual relationship with SAA. Because no implied contract existed between the parties, it is unnecessary to address the issue as to whether there was an implied indemnification agreement.
III.Indispensable Party
Finally, LTS asserte that BOA’s motion for summary judgment should be denied because BOA is an indispensable party within the meaning of Mass.R.Civ.P. 19. This Rule states that:
A person . . . shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action . . .
On this point, LTS’s argument fails because BOA is already a party to the action. “Joinder of additional parties is not necessary to accord complete relief among those already parties . . .” Commonwealth v. Town of Andover, 378 Mass. 370, 373 (1979). In other words, Rule 19 operates to join additional parties to an action in order to prevent inequity; however, Rule 19 does not preclude the court’s ability to eliminate a party from an action where equity does not require its involvement.
ORDER
For the foregoing reasons, Third-Party Defendant Bank of America’s Motion for Summary Judgment is ALLOWED.

 Joint tortfeasors are defined as “two or more tortfeasors who contributed to the claimant’s injury and who may be joined as defendants in the same lawsuit.” Black’s Law Dictionary 1627 (9th ed. 2009).

Because BOA has prevailed on this point, the court does not address the parties’ arguments regarding the statutes of limitation.