JOHN J. SWEETMAN *vs.* T. C. BARROWS & others.

Suffolk.    January 16, 1928. — April 11, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & SANDERSON, JJ.

*Labor Union. Voluntary Association. Conspiracy. Actionable Tort. Practice, Civil,* Entry of verdict under G. L. c. 231, § 120, Report.

At the trial of an action of tort for conspiracy against the officers and all the members of a voluntary association of moving picture operators, there was evidence that the plaintiff was a member of the association; that in a suit in equity brought by him certain insurance assessments on the members were declared illegal; that the officers of the association thereafter demanded that the plaintiff pay such assessments, which he refused to do; that several times he offered to pay his dues but that they were refused unless he also paid the assessments; that, because he refused to pay the assessments, he was expelled from a meeting of the association without objection of most of the members present, was refused admittance to a later meeting, and was denied by the business agent of the association the right to participate in the privileges of the association, whereby he was able to secure but little employment. After a verdict for the plaintiff the trial judge, in accordance with leave reserved under G. L. c. 231, § 120, entered a verdict for the defendants and reported the case for determination by this court. *Held*, that

(1) If it were essential that the plaintiff remain in the association in order to gain employment, he could recover for the wrong done him in depriving him of the means of earning a living;

(2) If the defendants conspired to deprive him of his right to dispose of his labor to the best advantage, and did so deprive him, he could recover;

(3) He could not be expelled from the association and deprived of his membership except as authorized by the by-laws of the association;

(4) Although mere membership in the association did not make all the defendants liable, the plaintiff could recover against those who participated in the conspiracy and assented to the illegal acts;

(5) Inasmuch as there was evidence of the liability of some of the defendants, the verdict improperly was entered for all the defendants and there must be a new trial;

(6) The case properly was before this court.

Tort. Writ dated February 9, 1925.

In the Superior Court, the action was tried before *Irwin,* J. There was a verdict for the plaintiff in the sum of $12,000. Thereupon the judge, in accordance with leave reserved, entered a verdict for the defendants under G. L. c. 231, § 120, and reported the case for determination by this court, judgment to be entered on the verdict if the ruling of the trial judge was correct; if it was erroneous, a new trial to be ordered. Material evidence is stated in the opinion.

*J. J. Enright,* for the plaintiff.

*W. J. Day,* for the defendants.

CARROLL, J. The plaintiff was a member of a labor union of moving picture operators known as Local No. 182, a voluntary association. The defendants are officers and members of Local No. 182. It is alleged in the declaration that the local union "has jurisdiction in dispersing work to its members over practically eighty-five per centum of the moving picture theatres and moving picture exchanges of Boston, and within a geographical radius of ten miles from the State House, Boston"; that the plaintiff is a member in good standing in Local No. 182 and has paid all lawful dues, lawful assessments and taxes. The declaration further alleges that in February, 1923, Local No. 182 enacted a plan of insurance by which assessments were levied on the members; that the plaintiff brought a suit in equity to test the legality of the assessments wherein it was decided that the assessments were illegal, and a decree was entered restraining the defendants from collecting the assessment from the plaintiff; that in February, 1925, Local No. 182 at a regular meeting, acting through its officers, demanded that the plaintiff pay forthwith "such illegal assessments"; that the plaintiff refused and "was ousted without hearing and without notice from the said meeting," and, with the "assistance of a police officer . . . [he was] removed and barred . . . from attending and from seeking readmission at the said regular meeting"; that the plaintiff has been deprived of all rights as a member of Local No. 182, as a result of his refusal to comply with the illegal demand made upon him; that the defendants "acting in concert, moved by enmity and ill-will . . . engaged in an unlawful combination and conspiracy

to injure the plaintiff . . . and . . . to prevent . . . [him] from earning his livelihood as a union motion picture operator;" that by reason of the conspiracy and the acts done in pursuance thereof, the plaintiff has been deprived of membership in Local No. 182, which carries with it "the right of the plaintiff to be placed and to secure work and labor, . . . so that the plaintiff cannot enter into contract of employment as a union picture operator." In the Superior Court there was a verdict for the plaintiff; and the case was reported to this court.

The decree in the equity suit referred to was entered in January, 1925. The plaintiff testified that in February of that year he attended a regular meeting of Local No. 182 and there were present fifty to fifty-five of the defendants (we understand that the total membership in the local was one hundred forty-three, all the members being defendants in the action); that after the sergeant at arms reported that the plaintiff had no card, the president asked him, "Are you ready to pay your dues and assessments?" to which the plaintiff replied "That . . . [he] wasn't prepared to pay. . . . [He] didn't come up that night prepared to pay dues and assessments"; that previous to this the financial secretary spoke to him about dues and assessments, and reported to the president. The plaintiff further testified that he had offered frequently to pay his dues and "they would not accept them without . . . [he paid] the illegal assessment"; that he offered to pay his dues in July, 1923, and the offer was refused by the financial secretary who informed him that the dues would not be accepted unless he paid the insurance assessment; that he later offered to pay his dues; that at the meeting of February 3, 1925, the president ordered the sergeant at arms to eject him and the president directed the sergeant at arms and the custodian of the hall to "get a police officer to come in and put . . . [him] out"; that the police officer asked him to "come outside a minute . . . so . . . [he] went outside with him"; that he then made an attempt to return to the meeting but "could not get in"; that just before he was ejected Frank McCullom, one of the members present, said to him, "Don't go out for anybody"; "that outside of what McCullom said no other member" objected and "every

member present was in a position to hear and see everything that transpired"; that in March, 1925, he again attempted to attend a regular meeting of the union; that "somebody opened the door about so far (indicating about two feet)" and closed the door in his face. He also testified that at the February meeting when requested by the president to leave the hall, he said that if the members voted for him to retire he would walk out peaceably, to which the president said, "there isn't any vote of the body necessary, you got to go out."

The plaintiff further testified as follows: A motion picture operator secures his work from the business agent of Local No. 182. When an operator is out of work he gives his name to the business agent who "distributes it among the members that are sitting in the extra list . . . *pro rata* . . . supposed to give each member . . . an equal share." In answer to a question as to the effect of the suit in equity on his obtaining employment, he testified: "It has affected my employment greatly in every way. It has affected it so that I could not go into any union house and get a position as a union motion picture operator." He was able to secure but little employment. From October, 1923, to February, 1925, he was present every day at the office of the business agent of the union and had seen "the business agent, Mr. Burke, give out work, . . . send them out on positions, but he (Burke) didn't send me . . . out." He was deprived of the right of a membership card in July, 1923. These cards were issued by Arthur Moulton, the financial secretary, and by one Fox, and he was told by Fox that the president had instructed him to accept no dues from the plaintiff until he paid the insurance assessments. He received no card after July, 1923. On several occasions he applied for a membership card and offered to pay his dues. Before the equity suit was begun, the members of the union were on friendly terms with him. After this, with the exception of twelve or fifteen members who were friendly, "I have been an outcast." On one occasion Jacob Abramovitz, a member of the union, said to him: "we will get you." The plaintiff further testified that on many occasions between Novem-

ber 1, 1923, and February 8, 1925, he spoke to Burke, the business agent, and asked for employment and Burke told him that when he paid his insurance assessments he would get work and not before.

On cross-examination the plaintiff testified that he appeared before the executive board; that Barrows, Moulton, Gray, Heath Nuzzolo, and Bixgorme were present at this meeting and "The executive board said . . . [he] would have to pay the insurance and that was all there was to it."

In answer to interrogatories introduced in evidence, the plaintiff said that all the members of the executive board were present at the meeting February 3, 1925, and "with the sanction and the approval of the members present participated in calling, and giving directions to the sergeant-at-arms at said meeting, to have me ejected"; that they all agreed to it.

James F. Burke, the business agent of the union, called as a witness by the plaintiff, testified in substance, that under the constitution of the union he was to allow only members in good standing "to go out on work"; that he did not remember sending the plaintiff to any work from November, 1923, to February, 1925; that he received complaints that the plaintiff was incompetent, of a nervous disposition "at all times having trouble with the assistant operator and that the show as per schedule was never on time"; that at the meeting in February, 1925, the plaintiff was asked: "do you desire to pay your dues?" and he replied: "no, I won't, I don't have to"; that the plaintiff at no time between November, 1923, and February, 1925, applied to him for work; that he never mentioned the word assessment to the plaintiff; that there was no prejudice against the plaintiff among the members or officers, and no discrimination against him, and no plan by the officers of the union to hinder him in his occupation; that he knew of no such plan or arrangement, and if such an arrangement existed he would know it; that the plaintiff did not get work because "he has not attended the office of the local where work is given out"; that the minutes of the meeting held February 3, 1925, showed that the plaintiff was asked to pay his dues and he refused, and the

president informed him he would have to leave the meeting room.

Thaddeus C. Barrows, the president of Local No. 182, testified that the plaintiff at the meeting in question was asked to pay his dues and refused to pay them; that before the equity suit was brought the plaintiff was asked to pay the insurance assessment; that since the stipulation was signed in the equity suit, in the presence of the witness, no demand had been made on the plaintiff to pay any such assessments by any officer or member of the union; that there never had been any combination or discussion among the officers to harm or hinder the plaintiff in his occupation. There was additional evidence that the plaintiff was not asked to pay assessments but was asked to pay his dues only; that he was not asked to pay assessments after the stipulation in the equity suit in October, 1923.

It was agreed that the forty members who were present at the meeting February 3, 1925, would testify that no request or demand was made on the plaintiff for the payment of his assessments; that he was merely requested to pay his dues, "and all but Mr. Bishop will testify that there was nothing said about not being prepared to pay."

Membership in the union was of value to the plaintiff, if his testimony were believed, as it was practically impossible for him to secure employment unless he continued as a member. His right to follow a lawful occupation under existing conditions will be protected by the court, and, if it were essential for him to remain in the union in order to gain employment, he can recover for the wrong done him in depriving him of the means of earning a living and in illegally expelling him or refusing to recognize him as a member. He had an undoubted right to dispose of his labor to the best advantage and if the defendants or any of them conspired to deprive him of this natural right, he can recover damages for the wrong done. *Carew* v. *Rutherford*, 106 Mass. 1, 14. *L. D. Willcutt & Sons Co.* v. *Driscoll*, 200 Mass. 110, 117. *Shinsky* v. *Tracey*, 226 Mass. 21, 24. See *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45. The plaintiff could not continue as a member of the union unless he paid his

dues, but he was not required to pay the insurance assessment; and if this assessment were insisted on as a condition to his membership, the members participating in this demand and in expelling the plaintiff because of his failure to accede to it are liable to him for his loss resulting from their misconduct.  If the plaintiff tendered his dues as he testified, and the duly authorized officer of the union refused to accept them, his expulsion was illegal.  He was entitled to fair treatment and could not be expelled and deprived of his membership except as authorized by the by-laws of the association.  See *Richards* v. *Morison*, 229 Mass. 458, 461; *Brennan* v. *United Hatters of North America*, 44 Vroom, 729.

The plaintiff's action is against all the members of the local union, many of whom were not present at the meeting at which the plaintiff was expelled and who were not shown to have had knowledge of the various acts complained of or in any way to have participated in them.  Mere membership in a voluntary association does not make all the members liable for acts of their associates done without their knowledge or approval, and liability is not to be inferred from mere membership.  *Newell* v. *Borden*, 128 Mass. 31.  *Volger* v. *Ray*, 131 Mass. 439.  *Ray* v. *Powers*, 134 Mass. 22.  *Lawlor* v. *Loewe*, 235 U. S. 522, 535, 536.  See *Willcox* v. *Arnold*, 162 Mass. 577.

If the contentions of the defendants were true, no wrong was done to the plaintiff.  If the jury found, as they could have found on the evidence, that he was not allowed to remain in the meeting solely because he refused to pay his lawful dues, the by-laws providing that a member indebted to the local for three months' dues "shall stand suspended, no vote of the Local being required," that he was not discriminated against by the officers of the association, and was not prevented from pursuing his occupation, then the plaintiff did not suffer an injury which is to be imputed to the defendants. But according to the plaintiff's story his rights were invaded, he was unlawfully deprived of membership in the union, he was prevented from securing employment and following his occupation.  The officers and members of the association,

who participated in this conspiracy and who assented to these illegal acts, can be called upon to respond in damages for the wrongs. *Newell* v. *Borden, supra.   Willcox* v. *Arnold, supra.* It was for the jury to determine who were present at the meeting of February 3, 1925, and who participated in any of the acts complained of.   They could find on the evidence that all of the members who were present at this meeting, with the possible exception of McCullom, assented to the plaintiff's expulsion and approved of the acts of the officers.

The case is before us on a report after the jury had returned a verdict for the plaintiff; before it was recorded, the judge reserved leave with the assent of the jury to enter a verdict for the defendants if upon exceptions taken "or the question of law reserved, this court or the Supreme Judicial Court should decide that such verdict for the defendants should have been entered."   The judge thereupon ordered that the verdict be set aside and a verdict entered for the defendants, and the case reported.

The case is properly in this court.   A verdict for the defendants was entered by the court.   *Nagle* v. *Driver,* 256 Mass. 537, and *Paulino* v. *Concord,* 259 Mass. 142, are to be distinguished because in these cases there was no existing verdict, while here there was a verdict which might be the basis of a final judgment.   The plaintiff made out a case against some of the defendants and a verdict could not be entered for all the defendants.   There must be a new trial.

*So ordered.*