15175

WATSON v. AMERICAN EQUITABLE ASSUR. CO. *ET AL.*

(12 S. E. (2d), 30)

May, 1939.

*Messrs. George D. Levy* and *Shepard K. Nash,* for appellant,

*Messrs. Joseph L. Nettles* and *M. M. Weinberg,* for respondent,

December 4, 1940.

The opinion of the Court was delivered by MR. JUSTICE STUKES.

It is alleged in the complaint in this action for damages that the first-named respondent, hereinafter for convenience referred to as the company, is a foreign fire insurance corporation licensed to do business in this State and having an office and agent for that purpose in Sumter County; that the second-named respondent, hereinafter for convenience referred to as the underwriters, is an association of fire insurance companies, also engaged in business in this State through an agent or agents, conducting investigations for its members, and that the company is a member of the underwriters; and that the company issued several fire insurance policies to a Mrs. Chandler and the defendants sent their agent, one Dreibelbis, from his place of residence in Pennsylvania to Sumter to investigate the loss under the policies. It is further alleged that after making such investigation respondents' agent, Dreibelbis, charged the plaintiff and his sons with having burned the property and upon resentment thereof by the appellant, Dreibelbis, while acting in the scope of his authority as agent of the respondents, assaulted appellant and inflicted injuries necessitating medical attention.

The answer of the company contains a general denial restricted by the other allegations which are in substance that Mrs. Chandler's loss under her policies with it had been adjusted and paid; denied that Dreibelbis was its agent in any capacity, but was the representative of a national organization whose business it is to investigate on its own responsibility insured and uninsured fire losses; that any injury received by appellant was in a fisticuff with Dreibelbis when the latter was not acting for the company, but for himself in self-defense in the difficulty which was caused, provoked and started by the appellant; and finally that the company neither exercised nor had any authority or control over the acts of Dreibelbis or the underwriters.

The latter's answer contains a general denial qualified by allegations that it is an unincorporated association, its members being certain insurance companies, one of which is the company here involved, and one of its functions is the investigation of fires, whether or not there is insurance, for the purpose of benefiting the general public; that it sent Dreibelbis to Sumter for the purpose of investigating the Chandler fire, which loss has been adjusted and paid; and that appellant's injuries resulted from a general fisticuff between him and Dreibelbis who was not acting for the underwriters but solely for himself in self-defense in the difficulty which was caused, provoked and started entirely by the appellant.

After the testimony was in respondents moved for a directed verdict in their favor upon the grounds that the evidence was "undisputed and points only to the conclusion that neither of the defendants can be liable because,

"(1) Dreibelbis was not acting as the agent of either of the defendants at the time of the altercation, nor was he acting within the scope of his authority:" (a) if the altercation was caused by language used by the appellant it admittedly related only to the Chandler loss and applied to Dreibelbis personally; (b) appellant's language which brought about the altercation was used by him solely against Dreibelbis personally; (c) the Chandler loss had been entirely closed and defendants were not liable for an altercation relating thereto; and (d) that it was undisputed that the only loss which Dreibelbis was investigating at the time was that of the appellant which occurred three weeks subsequent to the closing of the Chandler loss, and respondents were only exercising their legal rights in investigating appellant's loss by making full inquiry of him, and there is no testimony of any language used by Dreibelbis relating to the investigation of appellant's loss which was improper or which, in fact, caused the altercation; and finally, (2) that "the only reasonable construction to be put upon the testimony is that for some reason the plaintiff himself used opprobrious

language which could only bring about an altercation in all of the circumstances of this case and that Dreibelbis had every right to defend himself; therefore, the defendants could not be held liable for his acts in that connection."

After argument the trial Judge sustained the ground numbered (1) above and directed the verdict for the respondents, stating that there was no distinction between them (the respondents) and further stating that he had not considered ground (2) because it related to an aspect of the testimony which might be determined by the jury. Further explanation of the Court of the ruling was to the effect that there was no proof that Dreibelbis, respondents' investigator, was acting within the scope of his authority at the time of the difficulty because it appeared conclusively that the investigation of the Chandler loss had been concluded at the time of the difficulty and that the agent's authority thereabout was ended by his report; and that he was then investigating the appellant's fire. As to the contention of counsel that Dreibelbis was continuing the Chandler investigation in connection with that of appellant's fire the Court said: "There might be something to infer from that but it is only an inference. I see no dependable testimony before the Court of that, and that being the case, the Court could not recognize it to the extent of submitting it to the jury to assess damages against the company for Dreibelbis' act in the Watson case and tie it up with the Chandler case, in order to make them liable for something that might have happened with respect to the Chandler case"; and continued as follows:

"It is true that there may be testimony in the case going to show that during a conflict with Watson, according to Watson's statement, that the Chandler case was mentioned; but nevertheless the testimony is that at that time he was investigating the Watson case, the scope of his authority was to ascertain, at the time he was having the conversation with Watson, how the Watson fire originated and not the Chandler fire. I see nothing dependable to tie the two together.

And besides, under the terms of the policy in the Chandler case, which is the only one we have before us, the insurer had the right to investigate the manner in which this fire originated, to see whether or not it was one for which they were liable under the terms of the policy, or whether the circumstances were such that it took them without the scope of liability. They had a right to make such examination as was reasonably necessary to assure them how it occurred. They had a right to ask any pertinent and relevant questions of anybody to ascertain what they might conceive to be the truth of the situation.

"Now, my view of this case is that the Chandler case having been closed, as far as the investigation by Dreibelbis is concerned, nothing that he could say or do afterwards, and it having gone out of his jurisdiction was done within the scope of his employment, and even though it might be wrong, however wrong it may be, it was not an official act on his part, that is, as the officer or representative of the company, but merely acting for himself at that time. If the Chandler case had not been closed as far as he was concerned, as far as the investigation was concerned, if he had been still in the process of collating facts to ascertain how that fire occurred, and made statements or committed acts which were tortious in their nature and brought about the difficulty, then he would have been acting within the scope of his authority."

From the judgment entered upon the directed verdict plaintiff has appealed upon three exceptions which, in substance, charge error in the direction of verdict in that there was sufficient evidence to require the submission thereof to the jury on the issue of whether Dreibelbis was at the time of the altercation acting within the scope of his authority as agent and investigator of the defendants; and appellant for the purpose of his brief states a single question, as follows: "Did the trial Judge err in directing a verdict for the defendant?"

Necessarily the question can be answered only by a review and consideration of at least some of the evidence, which is unfortunate in view of the necessity of a new trial. Of course this Court has and intends to express no opinion as to the credibility of the witnesses and the weight which should be given their testimony, which are solely questions for the jury.

The appellant, plaintiff, testified that Dreibelbis visited his home first about two or three weeks prior to the altercation; came a second time in his absence, leaving word with his wife that he wanted to see him. Dreibelbis returned when he was there and he was called by his wife to the front porch. Dreibelbis first inquired as to what he knew about the Chandler fire, what his boys were doing at the location of the Chandler property and what he would have paid his boys to burn it and further wouldn't he have furnished gasoline to burn his own house? Plaintiff denied the charges and cursed Dreibelbis whereupon the latter struck him in the face with his fountain pen with which he was making notes, struck him with his fist and kicked him. Then there was a general struggle in which plaintiff was stabbed and cut in seven or eight places with the pen and one of his ribs was broken, after which he was treated by a physician who bandaged his side with tape.

On cross examination the witness testified that he had told a police officer that Dreibelbis had made a statement that he didn't like about his boys, accusing them of burning the Chandler house, but denied that he had said that he first struck Dreibelbis. He insisted that Dreibelbis asked him first about the Chandler fire and later as to his own. And he agreed with the statement of examining counsel that the Chandler investigation was closed three weeks before. His property which was burned was insured in "The Commercial Union".

Plaintiff's wife testified that the occasion of the fight was the fourth time that Dreibelbis had been to her and plaintiff's home, inquiring on at least some of the former oc-

casions about the Chandler fire. His first question on his final visit was asked of her husband also concerning the Chandler loss; and then he turned to the subject of plaintiff's fire and inquired whether plaintiff would not have paid his sons to burn the house, whereupon plaintiff cursed and Dreibelbis struck him with the fountain pen and "they went together", the witness being unable to stop them.

The daughter of plaintiff who was at home during the fray and fainted at the sight of it testified to about the same effect as did her mother, and that Dreibelbis and her father talked first about the Chandler fire, the former accusing the latter of employing his sons to burn the house, and then about plaintiff's fire loss.

For the defendants Dreibelbis testified that at the time of his altercation with plaintiff he was special agent for the underwriters and among his duties was that of the investigation of suspicious fires, but that he has no connection with the other. defendant, the company; that he was assigned by his employer to South Carolina in March, 1939, and arrived in Sumter about the 13th, and began an investigation of the Chandler fire on the 14th. After refreshing his memory from his daily reports he testified that he did not interview plaintiff in regard to the Chandler loss but only concerning his own fire; that he finished his investigation of the Chandler fire on March 16th, and was through with the case on March 19th, when he dictated his report to the New York office, and in connection with it he was, on March 16th, interviewing plaintiff's wife and other members of his family at his home when plaintiff came in and the witness asked him to be excused as he did not know plaintiff, this being their first contact. He testified further that on the day of the difficulty, April 14th, he went to plaintiff's house in the morning when plaintiff was not at home and returned in the afternoon, at which time he was investigating the fire involving the property owned by plaintiff and asked the latter routine questions as to the ownership, liens and loss of the property and when inquiry as to

the circumstances of the fire was made plaintiff cursed the witness and struck him and that the witness only defended and protected himself; that witness had no malice against the plaintiff and considered him as any other person whose fire the witness was directed to investigate and that he spent three days, April 13th, 14th and 15th, in the investigation of plaintiff's fire. Witness stayed in South Carolina a little more than a month, his business being the investigation of suspicious fires and if one be found by him to be of incendiary origin, the evidence thereof is turned over to the local authorities. Between the time he completed his report on the Chandler fire and started investigation of plaintiff's fire, about four weeks elapsed; his investigation was for the underwriters and in that connection he visited plaintiff on the day of the difficulty; that he asked plaintiff if he knew that the odor of kerosene or gasoline had been detected by someone at the fire which burned his house and at that time plaintiff assaulted him. The witness is not now in the employ of the underwriters.

Respondents in their brief cite only the case of *Courtney v. Express Company*, 120 S. C., 511, 113 S. E., 332, 335, 24 A. L. R., 128. Reference to it discloses that very different facts were there involved on which account it is not controlling here. It was a suit against an employer for damages for slander by an agent who while waiting at a railroad station to take a train and in apparently idle conversation with another of defendant's agents referred in the hearing of a bystander to Courtney, a former agent who was discharged from the service of the employer two weeks before, as having been discharged as "an ordinary thief". The conversation in which the alleged slander occurred had nothing to do with the duties of the agent in connection with the investigation and prior release of the discharged employee. The decision contains this important and distinguishing statement of the facts there found: "In the first place, it has not been made to appear that at the time of the utterance of the slander Park was engaged in any business whatever

for the company. It appears that he was at the station waiting for a train, and struck up a casual conversation with Minnick who was employed by the common master."

In this case only Dreibelbis testified that his investigation of the Chandler fire was concluded by his report "dictated to the New York office" on March 19th, which may be reasonably said to be contradicted by the assertions (denied by Dreibelbis) in the testimony of plaintiff, his wife and daughter that it was the first subject of his inquiry when he visited plaintiff's home admittedly in the performance of his duties on April 14th, and this visit followed up a former call on March 16th, when, according to Dreibelbis' testimony, he visited plaintiff's wife and interviewed her and other members of the family concerning the Chandler fire.

In this connection it should be recalled that Dreibelbis testified that it was his custom to turn over the results of his investigation to local officials when, in his opinion, they warranted such, from which we think it might be reasonably inferred that the payment of a loss or the making of a report did not necessarily end his investigation of a fire of which he was suspicious of the origin.

> In our view there was sufficient evidence from which it could be reasonably inferred that Dreibelbis was continuing his investigation of the Chandler fire, with which according to his testimony he was generally entrusted, at the time of the altercation. It may be added that this would be quite natural in view of his suspicion, reasonably inferable from the testimony, that the plaintiff was culpably connected with its origin as well as with the origin of his own fire. In his own words, Dreibelbis' "business was to investigate fires of suspicious origin".

Applicable to this case in both its "scope of authority" aspect and its related problem of the sufficiency of evidence upon which a reasonable inference of liability may be based, is the recent authority of *Plowden v. Wilson,* 186 S. C., 285, 195 S. E., 847.

For the reasons indicated we think there was error in the direction of the verdict; the judgment below is reversed and the case remanded for a new trial.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.