## FELDMAN v. NORTH BRITISH & MERCANTILE INS. CO. et al.

### No. 5092.

Circuit Court of Appeals, Fourth Circuit.

July 30, 1943.

Louis M. Shimel, of Charleston, S. C., and Claud N. Sapp, of Columbia, S. C. (Shimel & Rittenberg, of Charleston, S. C., on the brief), for appellant.

Stephen Nettles, of Greenville, S. C. (John I. Cosgrove, of Charleston, S. C., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Ben Feldman, a citizen of South Carolina, brought suit against two insurance companies, North British & Mercantile Insurance Company and New York Fire Insurance Company upon two causes of action charging: (1) conspiracy to accuse him falsely and maliciously of setting fire to his store in Summerton, South Carolina, and to procure his prosecution for the alleged offense, and (2) actually making the false and malicious accusation and procuring his arrest and prosecution on the charge, as the result of which he was arrested, given a preliminary hearing and discharged for lack of evidence. The District Judge, being of the opinion that the plaintiff had no case, directed a verdict for the defendants.

The evidence tended to show the following facts: Feldman had lived in Summerton for eighteen years and for two or three years had operated a small retail clothing and shoe store in which he also repaired shoes. In addition, he operated a separate retail liquor store. In August, 1935, the stock of goods in the dry goods and shoe store was worth $3,000, upon which he owed about $50. His stock in the liquor store was worth about $3,000 and was not insured. Insurance rates had been high in Summerton because there were no waterworks in the town. In June, 1935, after the waterworks had been established, a jobber in Charleston with whom Feldman was dealing, suggested that he should take out some insurance and Feldman, after first being refused a policy of $500 on account of its small size, secured a policy for $900 on the stock of goods and $100 on the shoe repairing machinery from the Charleston agent of the North British Company. The policy of insurance was not received by Feldman until some hours after a fire had occurred at 2 A. M. on Sunday, August 4. Feldman had closed and locked the store at midnight, Saturday, and after a few minutes' relaxation with some friends had reached his home at 12:30 A. M. At 2 A. M. the fire was discovered and he was sent for and found the door locked. He offered no explanation of the fire except to tell the firemen that some one had set fire to the store. Feldman kept a five gallon can of shoe oil, a can of shoe black-ing and a can of cement and cement thinner in the store for use in connection with shoe repairing.

The defendant insurance companies were members of the National Board of Fire Underwriters, an unincorporated association composed of two hundred and five insurance companies doing business throughout the United States. Among the objects of the association is to repress incendiarism and arson by combining in suitable measures for the apprehension, conviction and punishment of persons guilty of that crime; to gather and record statistics, establish classification of hazards and losses for the interest of the members and the public so as to reduce the fire waste of the country, and to conserve and promote the interest of the members and their policyholders by all proper and lawful means. When an insured has a fire, it is the practice for the insurance adjuster or the State Fire Marshal to report the fire to the association. The information is furnished by the insurance company directly or through its adjuster to the State Fire Marshal and generally the report of the fire is made by the insurance company which issued the policy covering the loss. If the association has any information in respect to an applicant for insurance, it furnishes the same to the member requesting it. The gathering of these reports and the furnishing of this information is part of the activity of the association.

Two or three days after the fire, the insurance adjuster came to see Feldman and offered him $150 in settlement for the loss, saying that he could offer no more without an estimate of value of a salvage man. Two weeks later, after a conference between the adjuster, a salvage man, the plaintiff and his attorney, the loss was adjusted for $875 which was paid to the plaintiff in October. The balance of the policy, $125, was then cancelled.

In the meantime, the events took place which constitute the basis of the suit. On August 16, 1935 a deputy of the State Insurance Commissioner and a special agent of the Board of Underwriters came to Summerton, questioned the plaintiff about the fire and went with him to the burned store. The agent of the Underwriters asked the questions. When the two men left, they drove to the office of the magistrate where the Deputy Commissioner swore out a warrant for the plaintiff charg-

268

ing him with arson. The magistrate's hearing took place on August 29, 1935 when the State was represented by the prosecuting attorney or solicitor and both investigators testified for the State. The charge was dismissed for lack of evidence to sustain it.

A few months later, the plaintiff reopened his store. He tried to get insurance from the principal agent writing fire insurance in Summerton but was unable to procure it. Four years later in 1939 he secured a policy of insurance from the agent of the New York Fire Insurance Company in Columbia and a few weeks thereafter he was notified by the agent that the company had cancelled the policy. He testified that he was unable to get any other insurance and could not build a home as he was unable to get a building loan without fire insurance.

It will have been observed that the evidence as to the New York Fire Insurance Company shows only that it was a member of the Board of Underwriters and that four years after the fire it issued a policy of insurance to the plaintiff but shortly thereafter cancelled it. There is no evidence of participation by this insurance company in the arrest of the plaintiff; in short, nothing but its membership in the association and its refusal of insurance to connect it with the case. We do not think that this is sufficient to show a conspiracy between the two defendant insurance companies in the first cause of action or liability on the part of the New York Fire Insurance Company for the malicious prosecution of the plaintiff charged in the second cause of action. It is generally held that an unincorporated voluntary association, formed to accomplish a common purpose, is bound to use the same care to avoid injury to others as natural persons, but mere membership in the body or contribution of dues or money to effectuate the common purpose does not make all the members liable for unlawful acts of the association done without their participation and without their knowledge or approval. Johnson v. Miller, 63 Iowa, 529, 535, 536, 17 N.W. 34, 50 Am.Rep. 758; Sweetman v. Barrows, 263 Mass. 349, 355, 161 N.E. 272, 62 A.L.R. 311; Malloy v. Carroll, 287 Mass. 376, 391, 191 N.E. 661; Weston v. Barnicoat, 175 Mass. 454, 459, 56 N.E. 619; Muetze v. Tuteur, 77 Wis. 236, 243, 46 N.W. 123, 9 L.R.A. 86, 20 Am.St.Rep. 115; Pandolfo v. Bank of Benson, 9 Cir., 273 F. 48.

The case, however, is different in respect to the other defendant, the North British & Mercantile Insurance Company, as these citations show. Liability of a member may exist without personal participation in the unlawful act of a voluntary association if the member sets the proceedings in motion or agrees to a course of action which culminates in wrongful conduct. The evidence shows that this defendant issued the policy that covered the burned property; and its adjuster visited the store two or three days after the fire and endeavored on behalf of the insurer to adjust the loss. Shortly thereafter, the agent of the underwriter and the Deputy State Fire Commissioner visited the plaintiff, questioned him and caused his arrest, and between the arrest and the discharge of the plaintiff at the magistrate's hearing, settlement of the loss for a substantial sum was agreed upon. It is of course possible that the defendant had no personal knowledge or participation in the institution of the criminal proceeding, but in the absence of any direct evidence on the point, it is a fair inference from the facts recited that the officers who caused the arrest to be made were acting on its behalf. On this account the case against the North British Company on the second cause of action should have been submitted to the jury. For cases dealing with the law of malicious prosecution, and the responsibility of associations for the acts of their agents in South Carolina, see, China v. Seaboard Air Line Ry., 107 S.C. 179, 92 S.E. 335; Jennings v. Clearwater Mfg. Co., 171 S.C. 498, 172 S.E. 870; Watson v. American Equitable Assur. Co., 195 S. C. 463, 12 S.E.2d 30.

The judgment of the District Court will be affirmed in toto as to the New York Fire Insurance Company. As to the North British & Mercantile Insurance Company, the judgment of the District Court will be affirmed as to the first cause of action; but reversed as to the second cause of action and remanded for a new trial thereon, in accordance with this opinion.

Affirmed in part, and reversed in part, and remanded for further proceedings.