525 So.2d 948 (1988)
James E. GUYTON and Wife, Dolly M. Guyton, Appellants,
v.
Herb HOWARD, Frederick Wester, and Willie Alexander, Appellees.
No. BP-276.
District Court of Appeal of Florida, First District.
May 11, 1988.
Charles J. Kahn, Jr., of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellants.
*949 Richard Smoak and Ross McCloy of Sale, Brown, and Smoak, Panama City, for appellees.
BARFIELD, Judge.
The Guytons appeal a final judgment in a negligence action, asserting that the trial court erred in directing a verdict in favor of appellees Howard, Wester and Alexander, and in refusing their requested jury instruction on the tort liability of members of an unincorporated association. We reverse.
Appellants sued the Ancient Egyptian Arabic Order of Nobles Mystic Shrine of North and South America and Its Jurisdictions, Inc. (Shrine) and seven individual members of a local temple[1] for injuries to James Guyton's eye which occurred during the "Return of the Drunk" scene,[2] a part of his initiation ceremony.
All of the individual defendants in the suit were members of the local temple, an unincorporated association affiliated with the national organization. Andrew Colvin, the "Illustrious Potentate" (leader of the temple), assigned some members to a "creation team" for the purpose of planning and performing the initiation. David Mitchell was called upon to play "the drunk" the day of the ceremony, when the member who usually played the drunk was not available. Mitchell went home and got his twelve-gauge shotgun. Colvin gave Mitchell blank shells, which Mitchell inspected. Ezell Roulhac played the role of the person attempting to eject the drunk.
Willie Alexander, the temple's "Recorder", had performed readings earlier in the initiation, and was filling out the appropriate paperwork at the time the drunk scene took place, about 1:00 in the afternoon.
Herb Howard, a past "Illustrious Potentate", arrived about twenty minutes before the drunk scene. He had been called to fill in for a member of the creation team, and was to conduct a lecture following the drunk scene. He was preparing his part at the time the accident took place.
Frederick Wester was not a member of the creation team, but was in the room at the time of the accident and had participated in earlier "tests" involved in the initiation.
It is undisputed that the "Return of the Drunk" scene is a regular part of the Shrine initiation, that it always involves the discharge of blanks from a firearm in the vicinity of the initiate, that the firearm used is often a shotgun, that each of the individual defendants knew that the drunk scene would be a part of Guyton's initiation, and that each of them was present in the room at the time Guyton was injured. There is some dispute in the evidence regarding whether the defendants other than Mitchell and Roudlhac were passive members of an audience during the drunk scene, or whether they were expected to participate to the extent of feigning surprise and alarm upon the entrance of the "drunk".
Appellants' amended complaint asserted in count I that the individual defendants were members of an unincorporated association (the local temple) and were "all engaged in a joint venture of performing the initiation ceremony," that they knew that the ceremony "regularly included the use and discharge of a shotgun in close proximity to the initiate," and that during the ceremony they "negligently and carelessly caused the shotgun to discharge" so that a projectile from the shotgun struck Guyton in the left eye, causing the loss of the eye.
*950 In count II, the complaint asserted that the national Shrine organization is a corporation doing business in Florida, that the local temple is a division of the Shrine and is administered and controlled by it, that the Shrine "knew or should have known of the activities, procedures and customs of the named defendants and/or Safia Temple in its initiation ceremonies, and that such activities involved substantial risks of serious harm to the initiant" (sic), that notwithstanding this knowledge, the Shrine "failed to take any action to properly control such ceremonies, although it had the right and power to do so, and thereby ratified and acquiesced in the actions of the named defendants in count I," and that the named defendants were the agents or representatives of the Shrine and were acting within the scope of the authority and under the control and supervision of the national organization.
Colvin, Roulhac, Alexander, Howard and Wester moved for summary judgment on the issue of liability. The trial court granted the motions, finding that although the gun was usually discharged toward the ceiling or floor, Mitchell fired the gun in the direction of Guyton, and that this act of firing the gun in Guyton's direction was not foreseeable by the other defendants. In Guyton v. Colvin, 473 So.2d 266 (Fla. 1st DCA 1985), the summary judgment was reversed because the record did not support the trial court's finding that Mitchell fired in Guyton's direction and the circumstances raised a sufficient question of foreseeability to present a factual issue.
At the close of the plaintiffs' evidence Wester, Howard, Alexander and the Shrine sought directed verdicts.[3] The trial judge found that the plaintiffs were proceeding on two theories of liability for each defendant: direct negligence and "vicarious" liability on a "joint venture" theory.[4] He granted the motions for directed verdict on the issue of the direct negligence of Howard, Wester and Alexander, but denied the Shrine's motion. He also denied the motions for directed verdict on the issue of the "vicarious" liability of Mitchell, Roulhac and the Shrine, and reserved ruling on similar motions of Howard, Wester, and Alexander.
The parties hotly contested the wording of the jury instructions. The trial judge rejected appellants' proposed jury instruction on the liability of members of an unincorporated association,[5] giving instead a hybrid of instructions requested by both parties.[6] The interrogatory verdict essentially *951 tracked the relevant portions of the jury instructions.
The jury found no negligence on the part of Mitchell and Roulhac, but found that the Shrine's negligence caused Guyton's damage.[7] It found Mitchell, Roulhac and the Shrine "vicariously" liable and absolved Wester, Alexander and Howard from liability.[8] The final judgment awarded appellants *952 $300,000, to be recovered from Mitchell, Roulhac and the Shrine.[9]
Appellants argue that the trial court should not have directed a verdict on the question of negligence in favor of Howard, Wester and Alexander because this court had already determined that the question of the foreseeability of Guyton's injury should have been submitted to the jury. They contend that it was for the jury to determine the legal duty owed Guyton by the appellees, whether this duty was breached by any of them, and whether such a breach was a cause of Guyton's injuries.
They assert that the trial court apparently overlooked the fact that each of the appellees actively participated in the activities of the day, and focused instead upon the question of who actually handled the shotgun. They point out that each of the appellees was well aware that a shotgun would be used in the ceremony, having been present and observed the discharge of guns in similar initiation ceremonies in the past, and that each of them remained in the lodge participating in various aspects of the day's ceremonies. They argue that the jury could have found that the conduct of Wester, Alexander and Howard in participating in the Shrine initiation ceremony which led up to the actual shooting exposed Guyton to an unreasonable risk of harm, so that a directed verdict on negligence was inappropriate, citing Crislip v. Holland, 401 So.2d 1115 (Fla. 4th DCA 1981), pet. for rev. den., City of Fort Pierce v. Crislip, 411 So.2d 380 (Fla. 1981), and Skroh v. Newby, 237 So.2d 548 (Fla. 1st DCA 1970).[10]
Appellants note that at trial appellees detailed all the things they did not do leading toward the accident resulting in the loss of Guyton's eye, but assert, "The one critical thing these three Shriners did not do was to remove themselves completely from this ultrahazardous activity involving the discharge of a gun indoors and in close proximity to the initiate, who had no idea what was going on." They contend that each of the appellees could have let it be known that he would have nothing to do with this dangerous activity, and could have verified that decision by leaving the lodge or refusing to attend on the day of the initiation, something a reasonably careful person would have done under like circumstances. They assert that failure to do so constituted negligence, pointing out that if all the Shriners had refused to participate in this initiation ceremony, there would have been no injury.
Appellees assert that the trial court properly granted the motions for a directed verdict on the claim of direct and individual negligence, since appellants failed to show that their mere presence in the audience was a proximate cause of Guyton's injury, notwithstanding appellants' "tenuous argument" that their presence in the audience created a unique individual duty because there would not have been a skit unless there had been an audience. They contend that their presence at the ceremony was not a substantial factor in producing Guyton's injury, citing Hoffman v. Bennett, 477 So.2d 43 (Fla. 3d DCA 1985), and that the jury "was given ample opportunity to revisit the individual or active negligence of the appellees" because the jury instructions *953 and the second interrogatory in the verdict required the jury to determine if their conduct contributed to the injury.[11]
Appellees point out that the drunk skit was promulgated by the national Shrine organization and had been used by temples throughout the country for many years. They assert that although Roulhac and Mitchell were active participants in the skit in which Guyton was injured, they were under the supervision of the Illustrious Potentate (Colvin) and the "creation director" (Rufus Neal). Appellees argue that they had no control over the inclusion of the skit in the initiation ceremony, selection of the initiation team, preparation of the blank shells, selection of the gun, or the actions of Roulhac and Mitchell. They note that Alexander objected to the last minute substitution of Mitchell to play the drunk, and urged the Illustrious Potentate to cancel the activities, but that Colvin would not do so.[12]
We find that the record contains sufficient evidence from which the jury could have found appellees liable as members of an unincorporated association under a theory of direct negligence based upon their participation in the initiation ceremony which they knew included the admittedly dangerous "Return of the Drunk" skit resulting in Guyton's injury.[13] We therefore reverse the directed verdicts in favor of Howard, Wester, and Alexander.
In finding only the national Shrine organization directly negligent, the jury may have accepted the individual defendants' argument that they were bound by the guidelines set out by the national organization and that they had no option but to carry out the initiation as directed by those guidelines under the supervision of Colvin, who had already been dismissed from the case.[14] On the other hand, the record indicates that the jury may have simply been confused by the manner in which the case was presented, the interrogatory verdict form, and the trial court's instructions.
Appellants assert that the trial court improperly phrased the jury instruction on the issue of whether the individual defendants could be liable by virtue of their participation in the activities of an incorporated association. They argue that the court's instruction misled the jury to believe that no defendant could be liable unless he either *954 fired the gun or knew the wadding would accidently hit Guyton's eye. They contend that their proposed instruction, which was rejected by the trial court, emphasized the proper scope of liability of a member of an unincorporated association, which includes not only acts which a member commits, but also acts which a member participates in, authorizes, consents to, or ratifies.[15]
They argue that under their requested jury instruction, the jury could have found a particular defendant liable if he either set the proceedings in motion or agreed to a course of conduct which culminated in the injury, but that the instruction given by the trial court required the individual to affirmatively concur in the tortious action. They note that this approach was rejected by the court in Steuer v. Phelps, 41 Cal. App.3d 468, 116 Cal. Rptr. 61 (Cal. App. 1st Dist. 1974), involving the liability of individual members of an unincorporated association for the negligent operation of an automobile by one of their members,[16] in which the court found that the jury instruction required too much,[17] and that it was not necessary to show that the other members approved the negligent acts of the driver, since it was the act of authorizing the driver to use the car which served to fasten liability upon the individual members.
Appellants assert that their claim of liability was grounded on the authorization or consent given by Howard, Wester, and Alexander to use of the shotgun, but that the instruction given by the trial court would have required a finding of direct participation in the negligent act itself. They contend the evidence is uncontroverted that each of the appellees participated in the initiation activities knowing that a gun would be used in the return of the drunk sequence, and that upon proper instruction the jury could have found that appellees authorized, consented to, or ratified Mitchell's act of discharging the shotgun. They argue that the instruction which was given does not truly address the question of the liability of members of an unincorporated association, since it requires a finding that the defendant took an active part in the act resulting in the injury, or gave assent or encouragement to the act. They assert that positive findings on these points would lead to a determination of direct negligence, not "vicarious" liability, and that the trial court's error was compounded by the fact that it had already directed a verdict in favor of Wester, Alexander, and Howard on the question of direct negligence, and so instructed the jury.
Appellees assert that the jury was given the opportunity to determine if they were liable because of their membership in the local temple and that the jury found that they were not. They contend that mere membership in an association does not expose a person to liability for the torts of other members, and that the more thoughtful and fair approach to the issue is to require some personal involvement with the tortious act itself by aiding, authorizing, or encouraging it, citing Thomas v. Dunne, 131 Colo. 20, 279 P.2d 427 (1955). They suggest that under appellants' view, "The right fielder of the neighborhood softball team would be liable when his teammate, the catcher with a well-known hot temper, punched the umpire."
Appellees argue that a fair reading of appellants requested jury instruction and the instruction actually given by the trial judge shows "only a semantic distinction without a substantive difference." They note that appellants' proposed instruction would impose liability if the member either initiated the action or agreed to it, while the trial court's instruction imposes liability if the member knowingly assented or encouraged the action, asserting that in either case the member must affirmatively concur in the tortious action before liability *955 is imposed. They assert that the trial judge was forced to craft a unique jury instruction without benefit of a standard instruction and that he "ably forged a middle-of-the-road approach to the issue," and urge this court not to set aside a verdict which is "conformable to law and the facts."
Although we have found no Florida appellate court opinions on the question of the liability of members of an unincorporated association for the negligent acts of other members, this issue and related issues have been addressed in various treatises and annotations,[18] as well as in opinions from other jurisdictions.[19]
*956 We shall attempt to lay to rest some of the evident confusion regarding unincorporated associations whose functions are fraternal or social as opposed to business or profit. The latter are governed by partnership law. The former are a legal enigma in Florida. Although we can talk about them, define them, pledge allegiance to them and contribute money to them (often for tax deductions), we cannot sue them. We can only attack their members, Johnston v. Albritton, 101 Fla. 1285, 134 So. 563 (Fla. 1931). Until the legislature chooses to change the legal status of unincorporated fraternal or social associations, we must operate within the strictures of established law.
The individual members of an unincorporated association are personally liable for tortious acts which they individually commit or participate in, or which they authorize, assent to, or ratify. 6 Am.Jur.2d, Associations and Clubs § 48; 4 Fla.Jur.2d, Associations and Clubs § 13. Although mere membership in a voluntary association does not make all the members liable for acts of their associates done without their knowledge or approval, Sweetman v. Barrows, 263 Mass. 349, 161 N.E. 272, 62 A.L.R. 311 (1928), a member may be liable without personal participation in the tortious act if he "sets the proceedings in motion or agrees to a course of action which culminates in wrongful conduct." Feldman v. North British & Mercantile Insurance Company, 137 F.2d 266, 268 (4th Cir.1943). See also, Libby v. Perry, 311 A.2d 527 (Me. 1973). In other words, the liability of a member of an unincorporated fraternal or social association is based upon his direct, active negligence, whether it takes the form of an act or a failure to act.[20] It is not a liability imputed to the member based solely on his relationship to an active tort-feasor. It is not "vicarious liability."
In defining vicarious liability as a form of "imputed negligence," Prosser illustrates the concept:
A is negligent, B is not. "Imputed negligence" means that, by reason of some relationship existing between A and B, the negligence of A is to be charged against B, although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it... .
.....
What has emerged as the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk.[21]
If this definition of vicarious liability were applied to unincorporated fraternal or social associations, all members of the association would necessarily share in the liability of each of them. But under Johnston v. Albritton, only those members named and served may be held accountable. We decline to craft a hybrid form of "associational liability" which holds even nonnegligent members of such unincorporated *957 associations liable for the negligent acts of other members. Horizontal vicarious liability among members of an unincorporated association formed for fraternal or social purposes does not exist in Florida until the legislature adopts such a concept.
The following section of the jury instructions given by the trial court in this case does not correctly define "vicarious liability":
... Then for any or all of those members to be held vicariously liable for injuries sustained in ceremonies held under the auspices of the organization, that person or persons must have taken an active part in the act resulting in the injury or in some manner had knowledge of the act resulting in the injury and gave assent or encouragement to the use thereof.
If it is shown that a person acted or failed to act in the manner described in the instruction, and such act or omission is inconsistent with the conduct of a reasonably prudent person, active or direct negligence on the part of that person has thereby been established. Negligence is not "imputed" to such a person under the doctrine of vicarious liability.
This instruction misstated the law and hopelessly confused and misled the jury regarding the liability of Howard, Wester and Alexander for the injuries sustained by Guyton. It also created an irreconcilable conflict with the court's ruling granting a directed verdict in favor of Howard, Wester and Alexander on the issue of their direct negligence.
The instructions which were given by this trial court did not make it clear to the members of the jury that they could not find the defendants liable for Guyton's injuries on the sole basis of their membership in the local temple, but that they should find each of the defendants so liable if they found that he committed or participated in a tortious act or failure to act, or authorized, assented to or ratified such an act or failure to act which resulted in Guyton's injuries, or helped to set in motion the proceedings or agreed to the course of action which culminated in the foreseeable conduct which caused those injuries. In other words, the jury was not clearly instructed that the liability of Howard, Wester and Alexander was to be determined based on the existence of a duty arising out of their relationship to the initiate and their knowledge of the proceedings which resulted in his injuries, and whether they breached such a duty by their participation in the initiation ceremonies.
The directed verdicts in favor of Herb Howard, Frederick Wester and Willie Alexander are REVERSED and the case is REMANDED for a new trial on the liability of these three defendants, with proper jury instructions.
SHIVERS and NIMMONS, JJ., concur.
NOTES
[1] The defendant members of Safia Temple # 188 were: Andrew Colvin, David Mitchell, Ezell Roulhac, Willie Alexander, Herb Howard, Frederick Wester, and Arthur Baker. Baker was dismissed as a defendant prior to trial; Colvin settled with the Guytons during the trial; the jury found Mitchell and Roulhac liable for Guyton's injuries.
[2] This "skit" is one of several "tests" which are a regular part of the initiation ceremony (called a "creation") set out in the Shriners' handbook. In this "skit" a temple member causes a disturbance, is ejected from the building, and returns with a firearm containing blank ammunition which is then discharged in a tussle with another temple member, while the other members present affect surprise and fear. It is meant to test the composure of the initiate.
[3] Colvin had settled with appellants and was dismissed as a defendant.
[4] The issues set out by the trial judge in his pretrial order included: "Were any or all of the defendants negligent in their acts or omissions such as to cause injury to plaintiffs" and "Were any or all defendants involved in a joint venture with each other so that any or all of defendants are vicariously liable for negligently injuring plaintiffs."
[5] Appellants requested the following jury instruction:

If you find that there was negligence on the part of any defendant which caused injury to Plaintiff Guyton, then an issue for your consideration is whether any other individual defendant had knowledge of the proposed initiation rites or stunts to be employed, or participated in the rites or stunts, or ratified, or gave assent or encouragement to the use thereof. You are advised that individual members of an unincorporated association (such as the local temple of the Shrine) are personally liable for wrongful acts which they individually commit, participate in, authorize, consent to, or ratify. 4 Fla.Jur.2d Associations and Clubs, Sec. 11. A member may have liability without personal participation if the member sets the proceedings in motion or agrees to a course of action which culminates in the wrongful conduct. 6 Am.Jur.2d Associations and Clubs, Sec. 48. Feldman v. North British Mercantile Ins. Co., 137 F.2d 266 (1943 4CCA S.Car.), Thomas v. Dunne, [131 Colo. 20] 279 P.2d 427, 432 (1955 Col.)
[6] The trial court gave the following edited version of the instructions requested by the defendants (words stricken are deletions; words underlined are additions; portions not relevant to the issues on appeal omitted):

In your deliberations, you are to consider several distinct claims. In particular, you are to consider whether any or all of the following Defendants, David Mitchell, Ezell Roulhac, Ancient Egyptian Arabic Order of the Nobles Mystic Shrine of North and South America and its Jurisdictions, Incorporated were negligent in their acts or omissions such as to constitute a legal cause of injury to the Plaintiffs in this case and.
The Court instructs you that it has granted a directed verdict in favor of the Defendants, Herb Howard, Frederick Wester and Willie Alexander on this issue of direct negligence. You should also consider whether any or all of the Defendants were actively participating in a joint venture with each other so that any or all of the Defendants are were vicariously liable for the negligence of one or more other Defendants in injuring the Plaintiffs in this case... .
The first issue for your determination on the claim of the Plaintiffs against David Mitchell, Ezell Roulhac, Frederick Wester, Willie Alexander, Herb Howard, and the Ancient Egyptian Arabic Order of the Nobles Mystic Shrine of North and South America and its Jurisdictions, Incorporated, is whether any or all of these Defendants were negligent in the performance of the initiation ceremony; and if so, whether such negligence was a legal cause of loss, injury or damage sustained by the Plaintiffs.
.....
The next issue for your determination on the claim of the Plaintiffs against David Mitchell, Ezell Roulhac, Frederick Wester, Willie Alexander, Herb Howard, and the Ancient Egyptian Arabic Order of the Nobles Mystic Shrine of North and South America and its Jurisdictions, Incorporated, is whether any or all of these Defendants, at the time and place of the incident complained of, were engaged in a joint venture with a negligent Defendant and were acting on behalf of the joint venture and within the scope of its business at the time and place of the incident complained of, vicariously liable for the negligence of one or more other Defendants in injuring the Plaintiffs in this case.
(The trial court omitted an instruction on the definition of "joint venture" which will not be reprinted here.)
If the greater weight of the evidence does not support the claim of the Plaintiffs against David Mitchell, Ezell Roulhac, Frederick Wester, Willie Alexander, Herb Howard, and the Ancient Egyptian Arabic Order of the Nobles Mystic Shrine of North and South America and its Jurisdictions, Incorporated, or any of them, then your verdict should be for those Defendants on that issue. If, however, the greater weight of the evidence does support the joint venture vicarious claim of the Plaintiffs against one or more of the Defendants, then your verdict should be for the Plaintiffs in the total amount of their damages as to those Defendants on that issue.
The Court has determined and now instructs you, as a matter of law, that David Mitchell, Ezell Roulhac, Frederick Wester, Willie Alexander and Herb Howard were members of an unincorporated fraternal association. A member of an unincorporated association is not liable simply because he is a member. A recognized difference exists between an unincorporated association organized for the transaction of business and one organized for fraternal or social purposes. When the association is formed for the purpose of engaging in business and making profits, its members are liable as partners to third parties for acts which are within its scope and are entered into with actual or apparent authority and a joint judgment against them is justified.
But when the purpose of the organization association is not business or profit, but is one organized for fraternal or social purposes, then for any or all of those members to be held vicariously liable for injuries sustained in ceremonies held under the auspices of the organization, that person or persons must have been an active participant in the affair resulting in Plaintiffs' injuries and, furthermore, that they knew or in the exercise of ordinary care should have known of the defective condition of the instrumentality claimed to have caused the injury taken an active part in the act resulting in the injury or in some manner had knowledge of the act resulting in the injury and gave assent or encouragement to the use thereof.
Appellees cited the following cases to support their requested instructions: Thomas v. Dunne, 131 Colo. 20, 279 P.2d 427 (1955); Lyons v. American Legion Post No. 650 Realty Company, 172 Ohio St. 331, 175 N.E.2d 733, 92 A.L.R.2d 492 (1961); Libby v. Perry, 311 A.2d 527 (Me. 1973); Feldman v. North British & Mercantile Ins. Co., 137 F.2d 266 (4th Cir.1943); Sweetman v. Barrows, 263 Mass. 349, 161 N.E. 272, 62 A.L.R. 311 (1928); and Orser v. Vierra, 252 Cal. App.2d 660, 60 Cal. Rptr. 708 (Cal.3d Ct.App. 1967).
These instructions were reread to the jury upon its request.
[7] The first interrogatory asked: "Was there negligence on the part of any of the following Defendants which was a legal cause of damage to Plaintiff James E. Guyton?" and listed Mitchell, Roulhac, and the Shrine. (The jury had been informed of the directed verdict for the other defendants on this issue.)
[8] Although the term was used several times in the jury instructions, "vicarious liability" was not specifically mentioned in the verdict form. The second interrogatory asked: "Did any of the individual Defendants take an active part in the act which resulted in the injury or in some manner have knowledge of the act which resulted in the injury and give assent or encouragement to the use thereof?" and listed Mitchell, Roulhac, Wester, Alexander, Howard and the Shrine.
[9] After the jury had begun its deliberations, appellants informed the court that they had come to an agreement with the national Shriners' organization, whereby the Shriners would guarantee up to $100,000 to make up the difference between what appellants could recover from the other defendants and their insurers and the sum of $600,000.
[10] In Skroh, the plaintiff's decedent was killed when his motorcycle was struck by an automobile operated by Newby, who was allegedly engaged in a race with Davis. Although no direct evidence was offered to support the allegation that Davis was involved in the race, the evidence did support the finding that Newby was operating at a very high rate of speed, that Newby and Davis were both deputy sheriffs, and that Davis was somewhere down the road at the time the accident occurred. This court reversed a directed verdict in favor of Davis, finding that a jury question was presented as to whether Davis was racing at the time of the collision so as to render him liable for the accident on a theory of direct negligence.
[11] The record indicates that the verdict and the jury instructions were intended to inform the jury that Howard, Wester and Alexander had already been found by the trial court not to be actively negligent, and that the only question to be determined by the jury regarding their liability was whether they were vicariously liable for the negligence of the other defendants.
[12] Appellants respond that Alexander's plea that he tried to talk Colvin out of going through with the drunk skit is "too little and too late", especially since his main objection was that there was only one initiate, and that the evidence does not support a finding that he attempted to do anything at all to make the drunk skit any safer.
[13] Colvin testified that Howard might have been "Deputy of the Oasis" at the time of the initiation, and therefore responsible for seeing that the initiate was not injured, and that the ceremony was carried out in compliance with the national organization's guidelines. Both Howard and Alexander testified that Colvin was Deputy at the time of the initiation. The jury could have concluded that Howard breached his duty of seeing that the initiation was carried out without endangering Guyton's safety.

The testimony was in conflict regarding whether Alexander, as a part of his duties as Recorder, had collected Guyton's personal belongings at the beginning of the initiation ceremony. All three appellees had active parts to play in the initiation ceremony, all were in the room at the time the drunk skit was performed, and the jury could have found from the conflicting evidence that they were expected to participate in the skit to the extent of feigning surprise and alarm upon the entrance of the "drunk".
We note that the record contains sufficient evidence from which the jury might have found appellees liable as members of an unincorporated association under a theory of direct negligence based upon their failure to warn Guyton or to denounce as dangerous the "Return of the Drunk" skit, which was a regular part of all initiation ceremonies. However, the complaint does not appear to plead such a theory of liability.
[14] If this was the logic behind the jury's answer to the first interrogatory, it is not clear how Mitchell and Roulhac could be found to be liable for the acts of the national organization. However, Mitchell and Roulhac have not contested the verdict against them, and no party has raised the inconsistency of the verdict as an issue on appeal.
[15] Appellants cite 4 Florida Jur 2d, Associations and Clubs, section 11.
[16] Appellants point out that both Steuer and this case involve the negligent use of a dangerous instrumentality.
[17] The instruction in Steuer was as follows: "You may not find the individual members of the association liable for the negligent acts of (the driver) unless you find that such acts occurred with the participation, knowledge or approval of said individual members." 41 Cal. App.3d at 472, 116 Cal. Rptr. 61.
[18] 6 Am.Jur.2d, Associations and Clubs §§ 47-48; 7 C.J.S., Associations § 38; 4 Fla.Jur.2d, Associations and Clubs § 11. See also Annot., 62 A.L.R.3d 1165, Liability of member of unincorporated association for tortious acts of association's nonmember agent or employee; Annot., 14 A.L.R.2d 473, Recovery by member from unincorporated association for injuries inflicted by tort of fellow member.
[19] In Sweetman v. Barrows, 263 Mass. 349, 161 N.E. 272, 62 A.L.R. 311 (1928), officers and members of a labor union assenting to the illegal expulsion of the plaintiff were held liable for his resulting loss of employment, but members not present at the time plaintiff was expelled, and not consenting to the expulsion, were not held liable.

In Feldman v. North British & Mercantile Insurance Company, 137 F.2d 266 (4th Cir.1943), insurance companies which were members of the National Board of Fire Underwriters, an unincorporated association, were sued by the insured for conspiracy and malicious prosecution as the result of his arrest for arson in connection with a fire in his retail store. The court affirmed a directed verdict for one company whose only connection with the case was its membership in the association and the fact that four years after the fire it issued an insurance policy to the plaintiff, but shortly thereafter cancelled it. The court reversed a directed verdict on the malicious prosecution claim against North British & Mercantile, finding that its officers, who caused plaintiff to be arrested, were acting on its behalf. The court noted that members are not liable for unlawful acts of the association which were done without their participation and without their knowledge or approval, but that a member may be liable without personal participation in the act if the members "sets the proceedings in motion or agrees to a course of action which culminates in wrongful conduct." Id. at 268.
In an action against eleven members of a Shriner's temple and the temple itself for injuries resulting from an electric shock to which the plaintiff was subjected while being initiated, Thomas v. Dunne, 131 Colo. 20, 279 P.2d 427 (1955), the court found that the judgment against the individual defendants could not be sustained because the complaint, which alleged negligence by the "duly authorized officers and agents" of the temple, did not allege that any particular defendant took an active part in the portion of the ceremonies which resulted in the injuries, or that any of the individual defendants "aided or abetted, advised or encouraged the performance of the acts which caused the alleged injuries." Id. at 430. The court explained:
We cannot subscribe to the proposition that one who becomes a member of an unincorporated association such as a fraternal organization, a veterans organization or any one of numerous other societies which might be mentioned, subjects himself to liability for injuries sustained in ceremonies held under the auspices of that organization, in the absence of any allegation in the complaint against him that he took an active part in the act resulting in the injury or in some manner had knowledge of the proposed initiation rites or "stunts" to be employed and gave assent or encouragement to the use thereof.
... If a plaintiff seeks relief from an individual defendant in a tort action, ... then that person to be held accountable must be actively connected with the commission of the negligent act, both by allegation of negligence on his part and proof thereof upon the trial.
Id. at 432.
In Lyons v. American Legion Post No. 650 Realty Company, Inc., 172 Ohio St. 331, 175 N.E.2d 733, 92 A.L.R.2d 492 (1961), a nonmember patron of a fish fry conducted by the Legion post died after inhaling carbon monoxide gas from a defective gas heater. The wrongful death action was prosecuted against the realty company which owned the building and 81 individual members of the Legion post (the post itself, an unincorporated association, was not a defendant). The court found the complaint sufficient, but stated:
[O]n the trial of the action to establish liability on the part of individual defendants evidence would have to be produced linking them as active participants in the affair resulting in plaintiff's decedent's alleged injuries, and, furthermore, that they knew or in the exercise of ordinary care should have known of the defective condition of the instrumentality claimed to have caused the injury.
Id. at 737.
In Orser v. Vierra, 252 Cal. App.2d 660, 60 Cal. Rptr. 708 (Cal.3d Ct.App. 1967), in a wrongful death action against six defendants arising out of an accidental shooting in the vicinity of a duck hunting clubhouse, the court reversed summary judgments for two members of the loosely organized duck hunting club, finding a justiciable issue regarding whether they had given the actual shooter (a prospective member) substantial assistance or encouragement under a "concerted action" theory, but affirmed summary judgments for three other defendants, finding nothing in the record to indicate that they even knew that the other three were "shooting firearms in the direction where their shots could hit anyone" and noting that since it found no liability under the "concerted action" theory, "the factor of club membership really adds nothing." Id. at 708, 716.
In Libby v. Perry, 311 A.2d 527 (Me. 1973), the plaintiff slipped on ice while leaving a dance sponsored by a National Guard Armory Committee, injuring his leg. The court affirmed a directed verdict against all the defendant members of the Armory Committee who actively participated and aided in the dance (by a unanimous vote setting the admission price for the dance at a meeting eight months earlier, by holding the office of treasurer during the planning and staging periods, by applying for use of the armory building, and by implication from their attendance records immediately prior to the event), but reversed the directed verdict against one member who was not shown to have participated or to have attended the meetings at which the dance was discussed.
[20] We recognize that a member of an unincorporated association may also be liable for an intentional tort which he individually commits or participates in, or which he authorizes, assents to, or ratifies.
[21] Prosser and Keeton on the Law of Torts 499-50 (5th ed. 1984 & Supp. 1988).